An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-939

Filed 20 May 2026

Wake County, No. 24CV023786-910

TYLER SCOTT HOGAN, Plaintiff,

v.

TERRANCE DOUGLAS THAYER, II, KRISTEN LEONARD THAYER, INTELLOMATE, LLC, 42 NORTH, LLC, ASAP SYSTEMS, INC., CAROLINAVEST, LLC, RUTH HOLDINGS, LLC, SUR VENTURES, LLC, T 42 SQUARED LLC, TAB RALEIGH, LLC, AMZ PROS, LLC, THAYER INVESTMENTS, INC., THAYER VENTURES, INC., TKT HOLDINGS, LLC, THE THAYER CO, LLC, AND, ROW 12, LLC, Defendants.

Appeal by Defendants from Order entered 24 April 2025 by Judge Vinston Rozier, Jr. in Wake County Superior Court. Heard in the Court of Appeals 21 April 2026.

*Phelps Dunbar LLP, by Sarah Covey Blount and Jonathan E. Hall, for Defendants-Appellants.*

*Harris Legal, PLLC, by Zachary M. Harris, for Plaintiff-Appellee.*

ARROWOOD, Judge.

Terrance Douglas Thayer, II ("Mr. Thayer"); Kristen Leonard Thayer ("Ms. Thayer"); Intellomate, LLC; 42 North, LLC; ASAP Systems, Inc.; Carolina Vest, LLC;

Ruth Holdings, LLC; Sur Ventures, LLC; T 42 Squared, LLC; TAB Raleigh, LLC; AMZ Pros, LLC; Thayer Investments, Inc.; Thayer Ventures, Inc.; TKT Holdings, LLC; The Thayer Co., LLC; and Row 12, LLC (collectively the "defendants") appeal from an interlocutory Order granting Tyler Scott Hogan's ("plaintiff") Motion for Sanctions as to All Defendants entered 24 April 2025.

I.      Background

On 29 July 2024, plaintiff filed his initial Complaint in this matter. Plaintiff asserts claims of fraud, civil conspiracy, unfair and deceptive trade practices, unjust enrichment, fraudulent transfer, negligent misrepresentation, breach of fiduciary duty, and breach of contract, with an additional claim for veil piercing because the corporate defendants were the Thayers' instrumentalities.

The Complaint's factual allegations are as follows. The course of conduct alleged began when Mr. and Ms. Thayer formed the online commerce venture Intellomate, which the Complaint describes as a "drop-shipping"[1] company. In March 2022, plaintiff saw a social media post by Intellomate advertising its passive investment opportunity and "model of success" and subsequently paid $500.00 to meet with Mr. Thayer. Mr. Thayer "promised they could generate incredible returns"

---

[1] In this practice, Merchant A identifies a product for sale by Merchant B and advertises the product himself at a higher price. When Customer orders the product from Merchant A, Merchant A buys the product from Merchant B but requests shipment to Customer's address. At the time of purchase, if the sale is no longer profitable for Merchant A or the item is no longer available from Merchant B, Merchant A cancels the sale and refunds Customer. Drop-shipping merchants frequently open online vendors through Amazon, which forbids the practice and accordingly terminates such vendors.

for him and offered a refund if he "hadn't made his money back in 18 months[.]" Mr. Thayer did not inform plaintiff that the drop-shipping procedure violated Amazon policy, that several clients' stores had already been terminated as a result, and that the procedure depended on the deception of both Amazon and its buyers. Mr. Thayer routinely told investors that he developed an automated system but instead relied on remote overseas workers.

The alleged "material misrepresentations and concealments" induced plaintiff to pay Mr. Thayer $35,000.00 and a monthly management fee, entering an "illusory contract" with Intellomate. Defendants also received a 35% share of any profits investors earned on drop-shipped purchases.

On 20 May 2022, an employee of Mr. and Ms. Thayer "accidentally included all of [their] clients" on an e-mail, which raised suspicions among its recipients. In a subsequent Zoom meeting, these investors confronted Mr. and Ms. Thayer about disappointing returns, and the Thayers refused to issue refunds to those who "wanted out of the investment." In July 2022, plaintiff requested itemized receipts to substantiate charges to his credit card, but Mr. Thayer refused and offered to let him out of the contract but without a refund. Plaintiff discovered that the Thayers often refunded plaintiff's customers even after delivery of their orders, and issued them false tracking numbers. After plaintiff demanded a meeting with Mr. Thayer, his access to the seller account was revoked, and on 19 August 2022, Mr. Thayer told the investors "they were going to suspend all of their stores indefinitely" and refused to

issue refunds or otherwise honor his guarantee. This foreclosed any possibility of a return on plaintiff's investment.

Plaintiff says Intellomate managed 200 stores through initial investments of "at least $35,000.00 each" over 18 months, thereby netting over $7,000,000.00. Plaintiff alleges that Intellomate, LLC; 42 North, LLC; ASAP Systems, Inc.; Carolina Vest, LLC; The Thayer Co., LLC; Ruth Holdings, LLC; Sur Ventures, LLC; T 42 Squared, LLC; AMZ Pros, LLC; TAB Raleigh, LLC; Thayer Investments, Inc.; Thayer Ventures, Inc.; and TKT Holdings, LLC (the "Corporate Defendants") are "primarily sham companies," most of which share the same office address and phone numbers, and for which Mr. and/or Ms. Thayer are listed as managers or corporate representatives. Plaintiff alleges that his contract with defendants was void *ab initio* because it was procured by fraud.

On 31 July 2024, all defendants received service of the above Complaint, except Mr. and Ms. Thayer; Row 12, LLC; TAB Raleigh, LLC; and AMZ Pros, LLC. Ms. Thayer was served 6 August 2024 and Mr. Thayer was served 12 August 2024. Plaintiff's Amended Complaint added a claim for punitive damages and a new defendant, Row 12, LLC, which was served 30 August 2024. TAB Raleigh, LLC and AMZ Pros, LLC were served 23 October 2024. Plaintiff's First Sets of Interrogatories and Requests for Admissions were dated 29 July 2024 for all defendants except Row 12, LLC, whose discovery was dated 28 August 2024. The trial court found that each defendant was served with these documents alongside the Summons and Complaints.

On 30 September 2024, Plaintiff's counsel Zachary M. Harris ("Mr. Harris") wrote to Defendants' counsel Sarah C. Blount ("Ms. Blount") asking for an estimated date of delivery for production, interrogatories, and requests for admission, noting that the informal extension granted to defendants' previous counsel had already expired. The following day, without responding to Mr. Harris, Ms. Blount filed a Motion requesting an extension to respond to plaintiff's interrogatories and requests for admissions and productions. Mr. Harris filed a Motion to Compel Discovery and to Deem Requests for Admission Admitted, concerning only the corporate defendants served 31 July 2024.

On 7 October 2024, all defendants except TAB Raleigh, LLC and AMZ Pros, LLC served responses to plaintiff's Requests for Admission. The same defendants filed Motions to Dismiss and an Answer to the Amended Complaint on 28 October 2024. As to this Motion to Dismiss and plaintiff's Motion to Compel, a hearing was scheduled with the trial court for 18 December 2024.

Per court order Mr. Harris also submitted an affidavit concerning the costs and fees incurred pursuing plaintiff's Motion to Compel. On 11 December 2024, Ms. Blount told Mr. Harris that she had a scheduling conflict on the date of the hearing, but he anticipated following the discussion that she would reschedule defendants' motions and that defendants would produce the discovery so he could withdraw the Motion to Compel. However, Ms. Blount did not actually tell Mr. Harris until 17 December 2024 that she would not attend the hearing, and no motion to continue

the hearing was filed. The same day, all corporate defendants, including TAB Raleigh, LLC; AMZ Pros, LLC; and Row 12, LLC, served responses to plaintiff's interrogatories and requests for production.

Following the hearing on 18 December 2024, the trial court allowed plaintiff's Motion to Compel and denied defendants' Motion to Dismiss in its Order filed 6 January 2025. The court ordered defendants to provide "full and complete responses" to the discovery requests within 21 days. After the court's deadline passed without defendants' compliance, plaintiff filed a Motion for Sanctions against Mr. and Ms. Thayer on 4 February 2025. The following day, Intellomate served supplemental responses to plaintiff's request for production, and all other corporate defendants served their supplemental responses on 20 February 2025. Mr. and Ms. Thayer did not serve their responses to plaintiff's requests for admission until 10 March 2025.

On 17 March 2025, plaintiff filed another Motion for Sanctions pursuant to Rule 37, this time as to all defendants, and requested a hearing for default judgment. Plaintiff contended that the interrogatory responses, responses to requests for production, and supplemental responses were not "full and complete" as required by the court's Order. Plaintiff requested "an appropriate sanction" from the court, specifically that the court "strike Defendants' Answers pursuant to Rule 37(b)(2)(c) and schedule a hearing for judgment by default." Plaintiff attached an exhibit tracking all documents and filings submitted by defendants thus far, noting each interrogatory and request as to which defendants either did not serve anything,

"refused to answer[,]" "asserted objections[,]" wrongly interpreted the request, served an incomplete response, or simply "did not provide the information sought." Mr. and Ms. Thayer served written discovery request responses on 18 March 2025.

The trial court heard this Motion for Sanctions on 1 April 2025. Ms. Blount had corresponded with court administrators and stated that she planned to attend, but no defense counsel appeared at the hearing. Mr. Harris described defendants' responses as having consistent problems: "no new documents and very minimal in the terms of substantive[ness] of responses, and everything was buried underneath a mountain of objections." The court noted, as to striking defendants' answers, that it had to "consider other sanctions before getting to that level." Mr. Harris agreed that the case law required this consideration, but he contended, "You don't have to go through them one by one and say, Well I didn't do this because, I didn't do this because. The standard is simply, Did I consider them?" Mr. Harris argued against the suitability of any available lesser sanctions: "[A] lesser sanction other than some sort of admission, which is what we're getting at, still relies upon the defense to hold up their end of the bargain, hold up their [end] under the rules, and we have no evidence to suggest that's going to happen. The court expressed discomfort with issuing a default judgment but agreed to issue an "order basically saying that the allegations of the complainant are admitted."

The court issued the Order granting plaintiff's Motion for Sanctions as to All Defendants. The court found that all defendants responded to plaintiff's production

and interrogatory requests after the Order granting his Motion to Compel, but that none of the responses were "full and complete as required by the January 6, 2025 Order and Rules 26, 33 and 34 of the Rules of Civil Procedure" and "this failure was not justified." The court also found that defense counsel had sent a letter on 20 February 2025 that indicated "a refusal to produce any further documents or answers from Defendants other than Defendant Intellomate" in violation of the same provisions. The court "considered Plaintiff's request to strike the Answer and enter default against Defendants, along with all other available sanctions, including lesser sanctions."

In conclusion, the court issued the following orders: It declined the request to strike the answer, ordering "as a more appropriate sanction" that all the allegations in the Amended Complaint were "established as admitted" against all corporate defendants, who were "precluded from contesting them." It ordered Mr. and Ms. Thayer to provide "full and complete responses" by 5:00 p.m. on 4 April 2025, and if they were not "full and complete" the Amended Complaint's allegations would be "established as admitted" and all defendants would be "precluded from contesting them." Last, defendants were ordered to pay attorney's fees and a fine of $100 per day for any further delays.

On 15 April 2025, defendants filed a Motion to Reconsider and Set Aside the Order Granting Sanctions. The trial court heard this Motion on 9 May 2025. On 21 May 2025, defendants gave Notice of Appeal as to "the Order Granting Plaintiff's

Motion for Sanctions as to all Defendants[.]" On 22 May 2025, the following day, the court issued its Order denying defendants' Motion for Reconsideration.

## II. Discussion

### A. Grounds for Appellate Jurisdiction

The Sanctions Order is interlocutory because it does not dispose of the entire pending case. *See Veazey v. Durham*, 231 N.C. 357, 362 (1950). Although such orders are generally not appealable, grounds for review exist where the Order "affects a substantial right." N.C.G.S. §§ 1-277(a); 7A-27(b)(1), (3)(a). When an order compelling discovery is enforced by sanctions pursuant to Rule 37(b), the order is "appealable as a final judgment." *See Walker v. Liberty Mut. Ins. Co.*, 84 N.C. App. 552, 554–55 (1987). Therefore, grounds for appellate review of the Sanctions Order exist, and we have jurisdiction so long as defendants' appeal was properly noticed. *Bailey v. State*, 353 N.C. 142, 156 (2000).

We note that the record reproduces only the first and third pages of defendants' Notice of Appeal. The first page lists all parties and reads "give this notice of appeal to the North Carolina Court of Appeals from the Order Granting Plaintiff's Motion for Sanctions as to all Defendants entered" but the second page, which must have continued this sentence, is omitted. The third page certifies notice of service to plaintiff's counsel with Ms. Blount's signature.

The applicable Rule of Appellate Procedure requires that notices of appeal "shall specify the party or parties taking the appeal; shall designate the judgment or

order from which appeal is taken and the court to which appeal is taken; and shall be signed by counsel of record for the party or parties taking the appeal[.]" N.C. R. App. P. 3, Rule 3(d). Compliance with this rule is required to confer jurisdiction on this court. *Bailey* 353 N.C. at 156.

"[A] court has inherent power to inquire into, and determine, whether it has jurisdiction to inquire into, and determine, whether it has jurisdiction and to dismiss an action *ex mero motu* when subject matter jurisdiction is lacking." *Reece v. Forga*, 138 N.C. App. 703, 704 (citing *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577 (1986)), *disc. rev. denied*, 352 N.C. 676 (2000). Because the record lacks the complete Notice of Appeal, making it unclear whether the Sanctions Order was properly identified or whether defendants appeal from any other filings by the lower court, the issue arises whether this notice was improper, depriving this court of jurisdiction to hear defendants' appeal.

Even if defendants failed to comply with all requirements of Rule 3(d), it is "well established" that a defect in a notice of appeal "should not result in loss of the appeal as long as the intent to appeal . . . can be fairly inferred from the notice and the appellee is not misled by the mistake." *Phelps Staffing, LLC v. S.C. Phelps, Inc.,* 217 N.C. App. 403, 410 (2011) (quoting *Smith v. Indep. Life Ins. Co.,* 43 N.C. App. 269, 274 (1979)) (internal quotation marks omitted), *accord Stephenson v. Bartlett*, 177 N.C. App. 239, 242 (2006) ("Mistakes by appellants in following all the subparts of Appellate Procedure Rule 3(d) have not always been fatal to an appeal."). "The

'fairly inferred' doctrine ensures that a violation of Rule 3(d) results in dismissal only where the appellee is prejudiced by the appellant's mistake." *Id.* Moreover, where a party "technically fails to comply with procedural requirements in filing papers with the court, the court may determine that the party complied with the rule if the party accomplishes the *functional equivalent* of the requirement." *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 157, (1990) (cleaned up, emphasis in original).

Although the parties failed to include the complete Notice of Appeal in the record, we presume the omission of its second page was an accidental administrative mistake. However, the Record provides context from which we can infer the Notice's contents and that plaintiff had sufficient notice of the Order appealed from.

Importantly, the Notice of Appeal precedes, by one day, the Court's Order denying the Motion for Reconsideration. However, we chiefly refer to plaintiff's Objections and Proposed Amendments to the appellate record, which concerned both the present appeal and defendants' associated appeal of the court's Order denying defendants' Motion to Stay Pending Arbitration. Therein, plaintiff requests inclusion of his briefs and exhibits supporting the Sanctions Order and opposing defendants' Motion to Stay, because they were "submitted to and considered by the Court in ruling" on those Motions. He objects to the inclusion of exhibits accompanying defendants' Motion to Reconsider and the transcript of the 9 May 2025 hearing, because "[t]hat Order has not been appealed and is not necessary to determining whether the appealed orders were erroneously granted" and the transcript "has no

relevance to the issues before the Court." Finally, he objects to defendants' Proposed Issues on Appeal, which reads, "Did the trial court err in granting Plaintiff's Motion for Sanctions pursuant to Rules 37 and 60(b) of the North Carolina Rules of Civil Procedure?" He objects because "[t]he Order on Defendants' Motion for Reconsideration pursuant to Rule 60(b) has not been appealed."

Accordingly, it is evident that plaintiff understood that defendants noticed appeal to this Court from the Sanctions Order, but not the Order denying their Motion to Reconsider. Therefore, because plaintiff had notice and was not prejudiced by improper notice, if any, we have jurisdiction to consider defendants' appeal only as to the Sanctions Order.[2]

B.     The Order Granting Plaintiff's Motion for Sanctions Against All Defendants

Trial courts are expressly permitted to "make such orders in regard to the failure [to obey a discovery order] as are just." N.C.G.S. § 1A-1, Rule 37(b)(2). Discovery rules "facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the receiving party to adequately prepare her case" and to "narrow[ ] and sharpen[ ]" the law and facts at issue in the dispute. *GEA, Inc., v. Luxury Auctions Mktg.*, 259 N.C. App. 443, 451

---

[2] We note that defendants' proposed issue on appeal is unchanged and includes reference to Rule 60(b), which allows parties to move for, and the trial court to grant, relief from a judgment or order. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. Rule 28(b)(6). Defendants did not properly notice appeal from the Order denying their Motion for Reconsideration, and their Brief contains no argument concerning this Order. Accordingly, defendants have abandoned any appellate argument as to either Rule 60(b) or the Motion for Reconsideration.

(2018). Accordingly, Rule 37's purposes "can be accomplished only if the court has the means and power to compel recalcitrant parties to abide by" discovery rules. *Id.* at 452. These Rules expressly permit the court to order that "the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]" N.C.G.S. § 1A-1, Rule 37(b)(2)(a).

### 1. Standard of Review

This Court reviews a trial court's decision to impose sanctions under Rule 37 for abuse of discretion. *GEA, Inc.*, 259 N.C. App. at 452. We disturb such rulings only if they are manifestly unsupported by reason or "so arbitrary that it could not be the result of a reasoned decision." *Id.* Findings of fact supporting a sanctions order are binding on appeal so long as competent evidence exists to support them. *Dunhill Holdings, LLC v Lindberg*, 282 N.C. App. 36, 55 (2022). "A trial court does not abuse its discretion by imposing a severe sanction so long as that sanction is among those expressly authorized by statute and there is no specific evidence of injustice." *Batlle v. Sabates*, 198 N.C. App. 407, 417 (2009) (internal quotation marks and citation omitted).

### 2. The Trial Court Did Not Abuse its Discretion in Granting Plaintiff's Motion for Sanctions Against All Defendants

Defendants offer three contentions supporting their argument that we must vacate this Order. They first contend the trial court did not properly consider lesser

sanctions or explain why lesser sanctions were inappropriate.

Defendants are correct that, before imposing sanctions amounting to the admission of a complaint's allegations, the court "must consider less severe sanctions." *Hursey v. Homes by Design, Inc.*, 121 N.C. App. 175, 179 (1995) (citation omitted). However, where the record "permits the inference that the trial court considered less severe sanctions," we may not overturn the decision unless it meets the abuse of discretion standard for arbitrariness. *Badillo v. Cunningham*, 177 N.C. App. 732, 734 (2006) (citation omitted).

Here, the Order plainly states that the court considered "all other available sanctions, including lesser sanctions." Moreover, the transcript at trial contains Mr. Harris's accurate statement of the law, his argument why lesser sanctions are inappropriate under the circumstances, and Judge Rozier's response: "I hear you on that. I recognize the same result." This exchange certainly permits the inference that lesser sanctions received the court's consideration. Furthermore, contrary to defendants' argument, the court was also not obliged to "list and specifically reject each possible lesser sanction prior to determining that dismissal is appropriate." *Badillo*, 177 N.C. App. at 735. Accordingly, the Order's language was sufficient on this question, and we find no abuse of discretion here.

The discovery and interrogatory responses at issue in the Order are included in full in the record on appeal. After reviewing their contents, we find substantial support for the trial court's determination. As argued by plaintiff, they are "very

- 14 -

minimal" in substance and "buried underneath a mountain of objections." Although they add up to a heavy stack of paper, they provide almost no information which would "permit the receiving party to adequately prepare [his] case" and, on practically every page, repeatedly object that plaintiff's clear and relevant requests and interrogatories are either vague, ill-defined, irrelevant, or not reasonably calculated to lead to the discovery of admissible evidence.

By way of example, one of plaintiff's requests reads as follows: "Produce copies of all written correspondence, including emails, text messages, and faxes, any of your employees, agents, and representatives made or received relating to Tyler Hogan, other than communications with your attorneys." Such correspondence is both material and relevant to the issues raised by plaintiff's complaint, and plaintiff excludes privileged communications between defendants and their attorneys.

Defendants objected to the request for the following reasons. First, they claimed "it is vague, ill-defined, ambiguous and misleading . . . . overly broad, unduly burdensome, and unlimited in time frame and subject matter." However, defendants had a business relationship with plaintiff for only a matter of months, and the breadth of that brief relationship largely corresponds to the scope of relevant and material discoverable information required to resolve the issues raised by plaintiff's complaint. Next, defendants object "to the extent that it requires the production of records not within the possession, custody, or control of Defendants." They next object "to the extent it improperly seeks to intrude upon attorney-client

communications and strategic considerations, which are protected by attorney-client privilege and the work-product doctrine." Plaintiff expressly excluded such communications. Last, they object "to the extent that it seeks materials involving confidential and proprietary information that would require a protective order for disclosure." However no protective order was proposed, much less tendered. This example shows why the trial court was correct in issuing sanctions as it shows how feckless defendants' responses were.

Similar sweeping objections make up the vast majority of defendants' discovery responses. The above example appears in the corporate defendants' response to plaintiff's first request for production, in which defendants objected or claimed privilege as to *each and every request*, providing plaintiff not one iota of discoverable information. Overall, the responses implicitly and inexorably leave the impression that this evasion was willful, perfidious, and defensive.

The discovery rules' emphasis is:

> not on gamesmanship, but on expeditious handling of factual information before trial so that the critical issues may be presented at trial unencumbered by unnecessary or specious issues and so that evidence at trial may flow smoothly and objections and other interruptions be minimized.

*Willis v. Duke Power Co.*, 291 N.C. 19, 34 (1976). The record before us makes clear that defendants did not handle their discovery obligations expeditiously, and impeded the presentation of this case's critical issues, impelling plaintiff to pursue time-

consuming and costly motions compelling discovery and requesting sanctions. Defendants' participation in discovery was illusory in substance and effect, perverting the discovery rules' purposes and the adjudicative process itself.

Accordingly, Judge Rozier's conclusion that defendants' responses were "not full and complete" was entirely reasonable. Indeed, this was a judicious understatement. Given the breadth and depth of defendants' lack of compliance with the rules, we identify no "specific evidence of injustice" in the court's manifestly rational choice to forgo lesser sanctions and order the sanctions selected. They are indeed severe, but severe sanctions were appropriate, consistent with the purposes of the Rules of Civil Procedure, expressly provided for by statute, and squarely within the discretion of the court.

Second, defendants contend that the order's conditional nature as to Mr. and Ms. Thayer thereby renders it void. But defendants offer this argument for the first time on appeal and did not raise this issue either when Judge Rozier discussed the conditions in open court or when they petitioned him to reconsider the sanctions after missing his court-ordered deadline.

We must dismiss this argument as not properly preserved for our review. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." *See* N.C. R. App. P. 10(a)(1); *see also Higgins v. Simmons*, 324 N.C.

100, 103 (1989) ("A party may not exchange his trial horse for what he perceives to be a steadier mount on appeal[.]")  Because defendants swap their horse midstream and waited until this appeal to present this argument, the Rules and longstanding precedent oblige us to dismiss it.

Third, Tab Raleigh, LLC; AMZ Pros, LLC; and Row 12, LLC challenge the Sanctions order because they were not subject to the earlier Order granting plaintiff's Motion to Compel.  This argument is unsuccessful.

Defendants' Motion to Compel Discovery includes three corporations among its list of defendants.  Following the hearing on 18 December 2024, the trial court allowed plaintiff's Motion to Compel and denied defendants' Motion to Dismiss in its Order filed 6 January 2025.  By the time of the hearing on the Motion, all corporate and individual defendants were served with interrogatories and discovery requests, and all had served inadequate responses.  All were included in the Order filed 6 January 2025 granting plaintiff's Motion to Compel and requiring "Defendants" to provide "full and complete responses" to the discovery requests within 21 days.

After the court's deadline passed without defendants' compliance, plaintiff filed a Motion for Sanctions against Mr. and Ms. Thayer on 4 February 2025.  **{R 355-57}**  The following day, Intellomate served supplemental responses to plaintiff's request for production, and all other corporate defendants served supplemental responses on 20 February 2025.  Defendants did not appear to be heard on the Motion for Sanctions, and they made no  objection to its conditional nature in the trial court.

"An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court." *Hicks v. Alford*, 156 N.C. App. 384, 390 (2003). Accordingly, defendants were obligated to "include in the record on appeal so much of the evidence . . . as is necessary for an understanding of all errors assigned." *Id*.

Absent this showing, we can only conclude that the Order Compelling Discovery included all defendants who had been served and were not fully participating in discovery at the time of the hearing, which included the three corporations. Further, this Order was not challenged in court and no defendant ever moved to limit or modify it to exclude certain parties. Instead, defendants appear to have chosen which parties the order applied to, in defiance of the plain text of the court's Order. Parties must "comply with the order actually entered, regardless of what a party *wishes* the order had required." *Dunhill*, 282 N.C. App. at 62 (emphasis in original).

For the above reasons, we affirm the trial court's 24 April 2025 Order granting Plaintiff's Motion for Sanctions. Therefore, the allegations in plaintiff's Amended Complaint are established as admitted against all sixteen defendants, and all sixteen defendants are precluded from contesting them.

### III.   Conclusion

For the above reasons, we affirm the Order entered 24 April 2025 granting plaintiff's Motion for Sanctions as to All Defendants.

- 19 -

AFFIRMED.

Judges HAMPSON and FLOOD concur.

Report per Rule 30(e).